WARNER, J.
The trial court dismissed a final declaratory judgment and denied a petition for writ of mandamus filed by appellant to determine her rights under an agreement in which Palm Beach County purchased property from appellant for use as a county park. The agreement included a right of repurchase option which appellant claimed she was entitled to exercise if the County granted proposed easements over the premises to an adjacent property owner. Appellant argues that the court erred in dismissing the complaint, because she was entitled to a declaration of her rights even though the County had not yet granted the easement. While we agree that the court should not have dismissed the action, we conclude that the court’s factual findings and conclusions of law actually declare appellant’s rights. We therefore affirm the final judgment but remand for correction to show that appellant’s rights have been declared. We also affirm the denial of the petition for mandamus.
In 1974 Cam D. Milani and his wife Lucia, the plaintiff/appellant in this case, purchased two tracts of land on the east and west side of A1A in the Town of Highland Beach. The land to the west of the west parcel was owned by the interve-nor in this case, Boca Highland. The Mi-lanis and Boca Highland disputed the boundary of their property and ultimately entered into a settlement of the boundary provided by a survey. The survey showed various encroachments. These encroachments consisted of part of an asphalt driveway, utility boxes, and a fence. The driveway has served Boca Highland since at least 1980 and continues to exist.
Mrs. Milani agreed to sell 5.6 acres of their property to the Board of County Commissioners of Palm Beach County in 1987, including the west parcel which was the subject matter of the 1980 boundary dispute. The County and the Milanis agreed that the property was to be used as a public park named for Mr. Milani. Specifically, the agreement provided:
At such time as a County park facility is opened on the Premises, it is the intent of the Parties to name such facility in memory of Mr. Cam D. Milani. And if such facility is ever transferred to another governmental entity, the park shall remain named in memory of Mr. Milani. *1224 In the event that the County ceases using the Premises for County purposes and offers the Premises for sale, then the County shall grant to the Seller a Right.of First Refusal to repurchase the Premises at the same price and on the same terms as agreed to by the prospective purchaser and the County.
Pursuant to this paragraph, Milani’s right of first refusal vests when the County, first, “ceases using the Premises for County purposes,” and second, “offers the Premises for sale.”
Paragraph five of the agreement required the seller to provide the County with a survey. If it showed any encroachments or title objections, the County had to give written notice to the seller of any objection. The seller would convey its interest in the property in accordance with the approved survey. Paragraph six further explained the purchaser’s remedy for title defects and provided that if the title commitment contained exceptions unacceptable to the County, it must give written notice within ten days. The seller could elect to cure exceptions, but the County was not required to accept the title with any uncured title defects it found unacceptable. As the trial court noted in its final judgment, “[Tjitle defects are dealt with, and only the Purchaser (Respondent County) has any remedy. No other provision of the agreement deals with any defects in title, or encumbrances or encroachments on the land.”
After the purchase, the property sat dormant for about ten years until the County began to make plans to develop a park on the property. In 1997, while planning the park, the County became aware of the Boca Highland encroachments. Accordingly, the west parcel was again surveyed in 2000. Audrey Wolf, Director of Facilities Development for Palm Beach County, testified that the survey revealed an eight to twelve foot encroachment on the western boundary of the parcel, which included a driveway, utility boxes, and a fence, essentially the same encroachments revealed in the 1980 survey. In addition, the survey revealed an underground sewer line, pull boxes for electronics, and irrigation boxes.
As the County began its plans to develop the park in Mr. Milani’s name, Boca Highland expressed concern about the park’s impact on its property. Accordingly, Ms. Wolfs staff investigated and concluded the County should grant Boca Highland one or more easements to legitimize the encroachments. The staff also concluded that the proposed easements would not impact the park.
Boca Highland and the County began negotiations and drafted a proposal. Pursuant to the proposal, the County would grant non-exclusive permanent easements to Boca Highland to formalize the encroachments that had existed since 1980. In exchange, Boca Highland would grant the County a temporary constructive easement to facilitate the construction of the park and a permanent easement, called a “legal positive outfall,” which would allow storm water accumulated on the County’s property to flow over Boca Highland’s property.
Around the same time, the County provided Mrs. Milani with the site plans for the park. Because she noticed the site plan contained the proposed easements to Boca Highland, she objected and filed this suit for declaratory judgment and mandamus. As a result of the litigation, the County did not complete the proposed easement.
In her complaint, Milani requested the court find that her agreement with the County prohibits the granting of easements to Boca Highland, and that the granting of an easement to any third party triggers Milani’s right of first refusal with *1225 respect to either the west parcel or the encroached area. Milani also asked the court to issue a writ of mandamus against the County requiring it to eliminate all encroachments benefiting Boca Highland on the west parcel. She claimed that the County had orally promised to remove the Boca Highland encroachments at the time it purchased the property. The County filed an answer and affirmative defenses to Milani’s complaint and Boca Highland filed a motion to intervene.
This litigation put the park development process on hold. However, the County repeatedly expressed that the plan to develop the park was simply suspended. In particular, Ms. Wolf testified, “Our position has been we have suspended all activities. So we intend on building the park on the direction hopefully by these plans.”
After a multi-day trial, the trial court made findings of fact and conclusions of law. With respect to Mrs. Milani’s claim that the granting of an easement to Boca Highlands activated her right of first refusal, the court found:
The circumstances which would give rise to the Seller having a right of first refusal have not occurred, and the County’s proposed granting of non-exclusive easements to BOCA HIGHLAND in return for the substantial benefits being received by the County in return ... would not constitute such circumstances.
The court further found that the encroachments on the property were “minor.” Specifically, the court said,
Existing and contemplated easements on the Premises benefiting BOCA HIGHLAND are or will be non-exclusive, thus benefiting the park, and thereby the County and the public; as noted below, even if they were to be exclusive to BOCA HIGHLANDS, they would not adversely affect the County’s establishment or use of the park.
The court accepted the testimony of Ms. Wolf that the existing easements would not interfere with the development of the park and in fact were necessary and beneficial to the County in its development. It concluded, “This Court hereby categorically finds, and hereby holds, that the granting of the de minimis easements proposed by the County do not in any way diminish the ability of the County to establish or maintain the public park contemplated by the parties.... ”
The court also made conclusions of law. The court found that the agreement had no patent or latent ambiguity. While it did not contain any term on the subject of the County’s right to grant easements not affecting the property’s use as a park, that absence did not give the court authority to modify the contract’s terms. It concluded:
Because the easements, existing and proposed, which do and will exist under the Premises have virtually no effect on the usefulness of the Premises for a park, the principle of de minimis non curat lex applies. “[T]he test to be applied is whether the encroachment is substantial enough seriously to interfere with the use and enjoyment of the premises.” Loeffler v. Roe, 69 So.2d 331, 337 (Fla.195[4]).
With respect to Mrs. Milani’s claim that the County promised to remove the Boca Highland encroachments, the court applied the integration clause of the contract which provided: “This Agreement integrates and supersedes all other agreements and understandings of every character of the Parties and comprises the entire agreement between them.” The court determined that the clause rendered “irrelevant” any testimony as to an oral promise by the County.
Based upon its findings of fact and conclusions of law, the trial court dismissed the declaratory judgment on the ground *1226 that Milani had not established a prima facie case. As to the petition for writ of mandamus, the court denied the petition. It concluded that mandamus could be used only to enforce, and not to establish, a right. As Mrs. Milani had no right to require the removal of the encroachments under the terms of her agreement with the County, the court denied the petition. Mi-lani appeals.
Milani contends that the court erred in dismissing her claim for declaratory judgment, because she had the right for the court to construe her agreement with the County with respect to the granting of easements to Boca Highlands. With respect to a declaratory relief action, we have explained that a complainant must show
that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; [or] that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.
City of Hollywood v. Fla. Power & Light Co., 624 So.2d 285, 286-87 (Fla. 4th DCA 1993). The standard for testing the sufficiency of a declaratory judgment complaint is set out in May v. Holley, 59 So.2d 636, 639 (Fla.1952):
Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.
With respect to a contract construction, however, the declaratory judgment statute provides:
Any person claiming to be interested or who may be in doubt about his or her rights under a ... contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a ... contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such ... contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.
§ 86.021, Fla. Stat. (2005). The statutes also allow a contract to be construed either before or after a breach. § 86.031, Fla. Stat. (2005).
Although the trial court thought that the dispute was premature, as no easement had been granted to Boca Highlands as yet, “[t]he fact that a controversy had not matured may not always be essential. It [a declaratory judgment action] may be employed to anticipate irreparable mischief to one’s business.... ” James v. Golson, 92 So.2d 180, 182-83 (Fla.1957). *1227 We think that the controversy over the County’s power to grant an easement over its property under the terms of the contract between Milani and the County was sufficiently mature as to permit resolution through the declaratory judgment. The County intended to continue with the park, and its director of operations stated that the County wanted to proceed with its current plans after the legal dispute was resolved. If the granting of an easement to Boca Highlands were a violation of the agreement, we see no reason that the court cannot settle the contract interpretation prior to a breach or the triggering of Milani’s right of first refusal.
The trial court also determined that Milani had not proved a prima facie case because it determined that Milani did not have a right under the contract to require the County to remove the existing encroachments or to prevent the grant of the easement contemplated in the negotiations between Boca Highlands and the County. The court abused its discretion in dismissing the complaint when it should have simply entered a declaration against Milani. “The fact that the declaration must be against the interest of the complaining party, and equity may require that costs be charged against him does not destroy the right to the declaration.” May, 59 So.2d at 639.
A reading of the final judgment dismissing the complaint shows that the court actually determined Milani’s rights under the sale agreement with respect to the proposed easement even though it involuntarily dismissed her complaint. We therefore remand to the trial court to revise its final judgment to declare Milani’s rights.
The trial court did not abuse its discretion in the remaining rulings challenged by Milani, and we summarily affirm those issues. On the issue of the trial court’s denial of the motion to recuse based upon the judge’s prior representation of one of the county commissioners, we conclude that the motion was legally insufficient. The judge did not have a current confidential relationship with the county commissioner or the county commission. This distinguishes Atkinson Dredging Co. v. Henning, 631 So.2d 1129 (Fla. 4th DCA 1994), relied on by Milani, where the judge and her husband were current clients of the law firm representing one of the parties in the case. Nor did the judge have the extent of contacts with the County as were present in the relationship between the judge and one of the parties in Brown v. Graham, 931 So.2d 961 (Fla. 4th DCA 2006), the other case most strongly relied upon by Milani.
We therefore reverse the final judgment for the trial court to revise the judgment to declare the rights of Milani with respect to the proposed easements and the obligations of the County on this issue under the agreement. We affirm in all other respects.
GROSS, J., and CHUMBLEY, DOUGLAS J., Associate Judge, concur.